UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

JACK HAZAN,

                      Debtor.

Case No. 1-15-41018-nhl

Chapter 7

----------------------------------------------------------------X
GSY CORP.,

                      Plaintiff,

  v.

JACK HAZAN,

                      Defendant.

Adv. Pro. No. 1-15-01070-nhl

----------------------------------------------------------------X
TOMER DAFNA,

                      Plaintiff,

  v.

JACK HAZAN,

                      Defendant.

Adv. Pro. No. 1-15-01071-nhl

----------------------------------------------------------------X

## **DECISION AND ORDER GRANTING MOTIONS TO DISMISS**

APPEARANCES:

Steven Eichel
ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK, P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
*Attorney for Plaintiffs*

David Wolnerman
WHITE & WOLNERMAN
950 Third Avenue, 11th Floor
New York, New York 10022
*Attorney for Debtor*

Israel Goldberg
GOLDBERG & RIMBERG, PLLC
115 Broadway
New York, New York 10006
*Attorney for Plaintiffs*

HONORABLE NANCY HERSHEY LORD
United States Bankruptcy Judge

GSY Corp. ("GSY") and Tomer Dafna ("Dafna," and with GSY, the "Plaintiffs") each commenced an adversary proceeding against Jack Hazan, debtor and defendant herein (the "Debtor"), pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6),[1] seeking to exempt from discharge their respective debts. The Debtor filed motions, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss each complaint. GSY Mot. to Dismiss, ECF No. 4; Dafna Mot. to Dismiss, ECF No. 4.[2] These two motions are before the Court here and, for the reasons set forth below, both are granted.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I). The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52, as made applicable by Bankruptcy Rule 7052.

## Background

As it must in the context of a motion pursuant to Rule 12(b)(6), the Court assumes the truth of the following factual allegations in GSY and Dafna's complaints. *See Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

The debts owed by the Debtor to each party arose under similar circumstances. For some period of time, Dafna and Yehuda Greenwald ("Greenwald"), the sole shareholder of GSY, were represented in unrelated matters by Terrence Oved ("Oved") of the Oved & Oved firm. GSY

---

[1] 11 U.S.C. §§ 101 *et seq.* may be referred to throughout as the "Code." References to "§ ___" are to sections in the Code unless otherwise specified. References to the "Rules" are to the Federal Rules of Civil Procedure, and references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.
[2] All citations to the record with the prefix "GSY" are to documents filed in Adv. Pro. No. 1-15-01070-nhl; all citations with the prefix "Dafna" are to documents filed in Adv. Pro. No. 1-15-01071-nhl. Though the adversaries were commenced independently of one another, the Court treats them together here, as it has in pre-trial conferences and hearings, due to their similarity.

Compl. ¶ 22, ECF No. 1; Dafna Compl. ¶ 21, ECF No. 1. In or around October of 2007, Oved

separately contacted Greenwald and Dafna at the Debtor's behest to recommend that they each

fund a bridge loan to the Debtor of $1 million. GSY Compl. ¶ 19; Dafna Compl. ¶ 18.

Unbeknownst to either Greenwald or Dafna, Oved also represented the Debtor at this

time. GSY Compl. ¶ 21; Dafna Compl. ¶ 20. Oved's representation of both the Debtor and GSY

was later deemed a conflict by the Supreme Court of the State of New York, Appellate Division,

First Department, and in a decision issued January 23, 2015, that court found that Oved had

breached his fiduciary duty to GSY. Dafna Compl. ¶ 28.

The two complaints diverge somewhat beyond these basic facts, and the distinct

allegations will be discussed in turn.

*GSY Complaint*

Prior to GSY funding its loan, Oved made several representations to Greenwald. Oved

explained that the loan would be used for "certain real estate projects" in which the Debtor and

several other individuals and entities had an interest. GSY Compl. ¶¶ 20, 32, ECF No. 1. The

other individuals mentioned by Oved were Glenn McDermott and Dan Shavolian, and the

entities included Beekman Development Associates LLC ("Beekman") and Hazak Associates

LLC ("Hazak").[3] *Id.* ¶¶ 12, 20. Oved further stated that the loan would be secured, and that he

had done his due diligence as to the Debtor's bona fides. *Id.* ¶¶ 23, 36. From that due diligence,

Oved continued, he found that the Debtor had an interest in certain real estate entities from

---

[3] GSY's complaint defines the "Cross-Claim Defendants" as Beekman Partners Group, LLC, Beekman Conduit LLC, Beekman Development Associates LLC, Nassau Beekman LLC, Hazak Associates LLC, Glenn McDermott, and Dan Shavolian. GSY Compl. ¶ 12. After defining these parties, the complaint later goes on to allege that Oved told Greenwald that the loan would go toward projects in which "the Debtor and the Cross-Claim Defendants" had an interest. *Id.* ¶ 20.

which he could repay the loan. *Id.* ¶¶ 23, 29. Oved finally represented that he was acting as an impartial party, and had no pecuniary interest in the contemplated transaction. *Id.* ¶ 28.

Around this time, Greenwald also spoke directly to the Debtor, who said that Oved was arranging everything "that was required to document . . . and provide security for the [l]oan." *Id.* ¶ 34. Though Oved was indeed drafting the loan documents, they were not delivered to Greenwald prior to the funding of the loan. *Id.* ¶ 38. One week after Greenwald's conversation with the Debtor, GSY wired $1 million in accordance with the Debtor's instructions. *Id.* ¶¶ 26, 34. At this point, Greenwald had neither received nor even seen the documents. *Id.* ¶¶ 34, 38.

The loan documents delivered after the funding of the loan were dated October 22, 2007, and reflected that Beekman was the borrower, and that the loan was guaranteed by McDermott, whom Greenwald did not know, and the Debtor. *Id.* ¶ 24. McDermott was also the individual who executed the loan documents, including the note and guarantee. *Id.* ¶¶ 24–25.

The exact date that the loan was to be repaid was either October 27 or October 30 of 2007. *Id.* ¶¶ 31, 40. In either case, Beekman defaulted on its repayment obligation, and GSY made a demand for repayment. *Id.* ¶¶ 41, 42. The Debtor then reaffirmed his personal obligation to repay the loan, and, by a writing dated December 12, 2007, transferred to GSY his equity interest in an entity known as 241 Fifth Avenue Hotel, LLC ("241 Fifth Avenue"). *Id.* ¶¶ 43–44. Oved later drafted and circulated agreements to that effect. *Id.* ¶¶ 44–45. Those agreements recited that the Debtor and Shavolian were members of Hazak, which in turn had an ownership interest in 241 Fifth Avenue. *Id.* ¶ 49.

On or about July 10, 2008, the Debtor executed a UCC-1 agreement (the "UCC Agreement") in favor of GSY, which GSY later filed, that encumbered the Debtor's interest in

4

the property owned by 241 Fifth Avenue.[4] *Id.* ¶¶ 50–51. The Debtor represented that he had authority to execute the UCC Agreement, which was consistent with his having, in the past, executed documents affirming his interest in 241 Fifth Avenue. *Id.* ¶¶ 52, 56–57. However, Shavolian asserted that this was not the case, and commenced an action on behalf of 241 Fifth Avenue to invalidate the agreement. *Id.* ¶¶ 52–54. GSY filed a cross-claim in this action against the Debtor, who in turn defaulted. Accordingly, the state court entered a default judgment against the Debtor in the amount of $2,938,744.39, which is listed on Debtor's Schedule F. *Id.* ¶ 69.

*Dafna Complaint*

Prior to Dafna funding his loan, Oved represented to him that the loan would be put toward the extension of a contract in a Beekman real estate deal in which "the Debtor had an interest." Dafna Compl. ¶¶ 19, 31. As was the case with Greenwald, Oved represented to Dafna that the loan would be secured, and that, according to Oved's due diligence, the Debtor held an interest in real estate entities from which repayment could be ensured. *Id.* ¶¶ 23, 26, 34. He also explained that, though he was acting at the Debtor's behest, he had no pecuniary interest in the transaction. *Id.* ¶ 25.

Like with GSY, Dafna funded the loan prior to receiving the loan documents, and the documents that he eventually received did not reflect that the loan was secured by the Debtor's assets. *See id.* ¶¶ 24, 35–36. What the documents did provide was that the loan was to be repaid within 30 days. *Id.* ¶ 37.

At some point between the funding of the loan and the repayment deadline, the Debtor and Oved made a joint request to Dafna to extend the repayment date an additional 30 days, and

---

[4] GSY's complaint states both that the UCC Agreement "encumber[ed] property owned by 341 Fifth Avenue," GSY Compl. ¶ 50, ECF No. 1, and that the agreement secured the Debtor's loan obligations "against the Debtor's interest in the" property owned by 241 Fifth Avenue, *Id.* ¶ 51.

Dafna granted their request. *Id.* ¶ 38. The Debtor ultimately defaulted on this extended deadline, however, and Dafna made a demand for payment. *Id.* ¶ 40. In response, the Debtor paid down the loan by $200,000, and further represented that he would repay the balance from the sale of one of Beekman's real estate holdings. *Id.* ¶¶ 42, 44. Yet, when that holding was sold to an investor named Joseph Chetrit, the Debtor informed Dafna that he could not use his proceeds from the sale to repay the loan. *Id.* ¶ 44. Dafna then proposed that the Debtor assist him in purchasing the defaulted mortgage loan encumbering the property owned by 241 Fifth Avenue, and the Debtor assented, agreeing to work with Dafna to repay the loan from that transaction's proceeds. *Id.* ¶¶ 45, 48–49.

This arrangement never materialized, however. Instead, the Debtor and Shavolian resolved the foreclosure action pending against 241 Fifth Avenue by entering into a forbearance agreement with the original mortgagee, Inland Mortgage. *Id.* ¶¶ 51, 52. That agreement and the rights to the property held by 241 Fifth Avenue were then assigned to a third party for a sum in excess of $20 million. *Id.* ¶ 52. The proceeds of this sale went to pay Inland Mortgage, and the balance was distributed to various third parties. *Id.* ¶ 52. Dafna was not among those parties, and never received a distribution from the sale.[5] *Id.*

*Procedural History and Arguments*

Based on the above facts, GSY and Dafna filed adversary complaints seeking to exempt their respective debts—$2,938,744.39 for GSY, arising from its judgment, and $800,000 for Dafna, representing the unpaid balance of his loan—from the Debtor's discharge. *See* GSY Compl. ¶¶ 69, 72–81; Dafna Compl. ¶¶ 57, 59–68. Both complaints seek relief under 11 U.S.C. § 523(a)(2)(A) and (a)(6). GSY Compl. ¶¶ 72–81; Dafna Compl. ¶¶ 59–68. As to the first cause

---

[5] Nor, for that matter, did GSY, despite the UCC Agreement. GSY Compl. ¶ 59.

of action in the complaints under § 523(a)(2)(A), each plaintiff asserts that the Debtor procured a $1 million loan through false pretenses, false representations, and actual fraud, and that the Debtor engaged in similar practices in order to avoid repaying the loan after it was funded. GSY Compl. ¶¶ 72–77; Dafna Compl. ¶¶ 59–64. As to the second cause of action under § 523(a)(6), each plaintiff argues that the Debtor willfully and maliciously induced the funding of the loan without any intention of repaying that sum, and subsequently engaged in further willful and malicious behavior as a means of avoiding repayment. GSY Compl. ¶¶ 78–78; Dafna Compl. ¶¶ 65–68. Both causes of action therefore seek to exempt the respective debts based on two different periods in time: one encompassing the Debtor and Oved's actions prior to the funding of the loans, and a second encompassing those actions frustrating Dafna and GSY's attempts to collect after the loans were funded. *See* GSY Compl. ¶¶ 72–81; Dafna Compl. ¶¶ 59–68.

      The motions to dismiss filed by the Debtor in each adversary proceeding raise the same set of arguments. In each motion, the Debtor avers that the respective complaint fails to state a claim under either cause of action that meets the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b). GSY Mot. to Dismiss ¶¶ 25–28, 29–34, ECF No. 4; Dafna Mot. to Dismiss ¶¶ 27–31, 32–37, ECF No. 4. The Debtor also argues, more specifically, that the Plaintiffs both funded the loan prior to receiving their respective loan documents, and therefore have failed to sufficiently allege that their reliance on Oved's representations was justified, as is required under § 523(a)(2)(A). GSY Mot. to Dismiss ¶¶ 9–12; Dafna Mot. to Dismiss ¶¶ 10–14. Further, because the statements made in each pre-loan period came almost exclusively from Oved, and not the Debtor, the Debtor argues that each plaintiff must seek to, but ultimately cannot, impute Oved's wrongdoing to the Debtor. GSY Mot. to Dismiss ¶¶ 16–20; Dafna Mot. to Dismiss ¶¶ 18–22. Finally, the Debtor argues that any action taken by the Debtor after the

funding of the loans is irrelevant to the issue of dischargeability. GSY Compl. ¶¶ 13–15; Dafna Compl. ¶¶ 15–17.

In response, beyond disputing generally that their pleadings are sufficient to meet the burden imposed by Rule 9(b) and each element of the two causes of action, the Plaintiffs assert that Oved's wrongdoing may be imputed under the agency theory of apparent authority, and that the post-loan actions of the Debtor must be considered as a part of the totality of the circumstances. *See generally* GSY Opp'n, ECF No. 9; Dafna Opp'n, ECF No. 8. In its opposition, GSY raises the additional argument that the Debtor is prevented from disputing a fraud determination in light of the default judgment entered against him by the state court. GSY Opp'n ¶¶ 53–56.

The Debtor submitted a reply brief in each adversary proceeding, GSY Rep., ECF No. 11; Dafna Rep., ECF No. 13, and the Court held multiple joint hearings on the motions. *See, e.g.*, GSY Feb. 10 Tr., ECF No. 23. At the Court's request, GSY and the Debtor also submitted additional briefing on the effect of the state court judgment. GSY Decl., ECF No. 27; GSY Letter, ECF No. 28. The motions were subsequently marked submitted.

## Discussion

### *Motion to Dismiss Standard*

Under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012,[6] a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[6] "Rule 12(b)–(i) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." Fed. R. Bankr. P. 7012.

liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must allege enough facts to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

This burden is greater when a complaint alleges fraud or mistake, as it must satisfy the heightened pleading requirements of Rule 9(b), made applicable here by Bankruptcy Rule 7009. *In re Ippolito*, Bankruptcy No. 12–70632–ast, Adversary No. 12–8403–ast, 2013 WL 828316, at *3 (Bankr. E.D.N.Y. Mar. 6, 2013). Pursuant to Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity mandated by the Rule requires that "the pleading must set forth the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *Ippolito*, 2013 WL 828316, at *4 (quoting *In re Henein*, 257 B.R. 702, 706 (E.D.N.Y. 2001)). As for state of mind, it can be "'averred generally,' [but] must not be mistaken for 'a license to base claims of fraud on speculation and conclusory allegations.'" *Id.* (quoting *Henein*, 257 B.R. at 706). Ultimately, the factual allegations made must provide for a "strong inference" of fraudulent intent. *Id.*

In ruling on a motion pursuant to Rule 12(b)(6), the Court may consider the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and matters subject to judicial notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–

48 (2d Cir. 1991). The Court accepts factual allegations in a complaint as true and draws all reasonable inferences in favor of the non-movant. *Roth*, 489 F.3d at 501.

*Preclusion*

Prior to addressing the merits of each cause of action, GSY's argument that the Debtor is precluded from disputing its allegation of fraud must be considered. GSY raises the doctrines of *Rooker-Feldman* and *res judicata* to suggest that the Debtor's fraud has already been determined, and cannot be re-litigated here. Yet, GSY's reliance on *Rooker-Feldman* is misplaced. Broadly speaking, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But the Debtor invites no such review of the state court judgment here. Instead, he simply disputes that the Plaintiffs have sufficiently plead causes of action under § 523, which is wholly outside of the scope of the state court's judgment, no less its jurisdiction. *See In re DiNoto*, 46 B.R. 489, 491 (B.A.P. 9th Cir. 1984); *see also In re Tarone*, 434 B.R. 41, 50 (Bankr. E.D.N.Y. 2010) (noting that exclusive jurisdiction is conferred upon bankruptcy courts to determine the dischargeability of debts).

Similarly, *res judicata*, also referred to as claim preclusion, does nothing to prevent the Debtor from contesting GSY's complaint. Under New York law, the doctrine provides that, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Specialized Realty Servs. LLC v. Maikisch*, 123 A.D.3d 801, 802 (N.Y. App. Div. 2d Dep't 2014) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)). However, because issues of dischargeability are within the exclusive jurisdiction of the bankruptcy court,

10

they fall outside of the scope of claims barred by the doctrine. *See, e.g.*, *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979); *DiNoto*, 46 B.R. at 491; *In re Moran*, 413 B.R. 168, 178–79 (Bankr. D. Del. 2009); *In re Billings*, 94 B.R. 803, 807 (Bankr. E.D.N.Y. 1989); *In re Huff*, 16 B.R. 823, 824–25 (Bankr. W.D. Ky. 1982).

The default judgment entered against the Debtor therefore does not, under the arguments raised by GSY, have any effect on this Court's ability to make a determination as to whether the subject debts are nondischargeable under § 523(a)(2)(A) and (a)(6).[7]

*Dischargeability*

Section 523(a)(2)(A) of the Code excepts from discharge any debt "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by . . . false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A). A creditor seeking to deem its specific debt non-dischargeable under this provision has the burden of proving each relevant element by a preponderance of the evidence. *See In re Cahill*, Case No.: 15-72418-reg, Adv. Pro. No.: 15-08298-reg, 2017 WL 713565, at *5 (Bankr. E.D.N.Y. Feb. 22, 2017).

Here, GSY and Dafna's respective first causes of action allege that the Debtor and Oved have acted in a manner that satisfies all three types of fraud enumerated in § 523(a)(2)(A). To make a prima facie case under the first, false pretenses, a plaintiff must establish: "(1) an implied misrepresentation or conduct by the debtor; (2) promoted knowingly and willingly by the debtor;

---

[7] GSY cited certain cases in its additional briefing involving collateral estoppel, and it might have fared slightly better had it explicitly alleged that doctrine as opposed to *res judicata*. In addressing collateral estoppel, this Court has previously held that, "[a] prior adjudication may have preclusive effect in a subsequent dischargeability proceeding if the elements of the claims in the prior proceeding are identical to the elements of § 523(a)." *In re Boyard*, 538 B.R. 645, 653 (Bankr. E.D.N.Y. 2015) (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)). In light of this, an argument as to collateral estoppel would not have been dead on arrival. Nevertheless, because the state court judgment makes no legal or factual findings, the argument would not have gone far. *See, e.g.*, *In re Hyman*, 320 B.R. 493, 503 (Bankr. S.D.N.Y. 2005) (declining to afford preclusive effect to state court judgment that provided no basis for declaring the subject debt nondischargeable).

(3) creating a contrived and misleading understanding of the transaction on the part of the creditor; (4) which wrongfully induced the creditor to advance money, property or credit to the debtor." *Id.* at \*6 (citing *In re Hambley*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005)).

As for the second, false representation, it must be shown that (1) the debtor made a false or misleading statement, (2) with an intent to deceive, (3) in order for the creditor to turn over money or property. *Id.* (citing *In re Janac*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009)). Though similar to a false pretense, a false representation differs in that it requires an explicit, definable statement resulting in a misrepresentation, while a false pretense is conduct that promotes or implies a misleading scheme. *Id.*

Finally, actual fraud may be predicated on a showing of "anything that counts as 'fraud' and is done with wrongful intent." *Husky Int'l. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). This includes a fraudulent conveyance scheme, as the Supreme Court held in *Husky*, but may also include fraudulent inducement based on a misrepresentation. *See Cahill*, 2017 WL 713565, at \* 7. When the fraud alleged involves such a misrepresentation, a creditor must demonstrate that misrepresentation, as well as scienter, reliance, and harm. *Id.* (quoting *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006)).

Accordingly, though each of the above types of fraud under § 523(a)(2)(A) are conceptually independent, when the allegations focus on misrepresentations, all three share the elements of scienter, reliance, and causation. *Id.* (citing *Field v. Mans*, 516 U.S. 59, 68 (1995)).

Section 523(a)(6), alleged in each of the Plaintiffs' second cause of action, exempts from discharge a debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6); *see also Salim v. VW Credit, Inc.*, 577 B.R. 615, 624 (E.D.N.Y. 2017). Under this provision, "willful" and "malicious" are separate elements, and

each must be independently satisfied. *Id.* (quoting *In re Soliman*, 539 B.R. 692, 698 (Bankr. S.D.N.Y. 2015)).

As explained in greater detail below, these standards apply differently to conduct occurring prior to the extension of funds, and that occurring after. Though GSY and Dafna have urged this Court to utilize a different, totality of the circumstances approach, they have offered no support for doing so.[8]

Pre-Loan Period

All of the representations made during this period came from Oved, save one, when the Debtor spoke directly to Greenwald about Oved preparing the documents to secure the loan. *See* GSY Compl. ¶ 34. As it would therefore likely be Oved's actions, and not the Debtor's, that would satisfy some subsection of § 523, the debts owed by the Debtor could be nondischargeable only if he could be held liable for Oved's actions. Whether Oved's liability, if any, may be imputed to the Debtor is therefore a preliminary issue for both subsections (a)(2)(A) and (a)(6).

Liability under § 523(a)(2)(A) may be imputed to a debtor based on principles of agency, but not on the theory posited by GSY and Dafna. The Plaintiffs assert that the Debtor may be liable on an apparent authority standard, by which "words or conduct of the principal, communicated to a third party, [] give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Fennell v. TLB Kent Co.*, 865 F.2d 498, 503 (2d Cir. 1989) (quoting *Hallock v. State*, 64 N.Y.2d 224, 231 (1984)). Yet, here, the Debtor made no representation to Dafna about Oved's status, and only one statement to Greenwald, which gave an appearance that Oved had less authority than he likely held as the Debtor's attorney. Indeed,

---

[8] Indeed, the case cited by both Dafna and GSY, *In re Rosen*, 296 A.D.2d 504 (N.Y. App. Div. 2d Dep't 2002), addresses what behavior may be considered in judging an individual's undue influence over the execution of a will. *See* Dafna Opp'n ¶ 37; GSY Opp'n ¶ 46.

both of the Plaintiffs allege that they were unaware of Oved's relationship to the Debtor. As such, apparent authority provides no basis to impute liability to the Debtor.

Rather, "[a]n agent's fraud will be imputed to the principal only where the principal knew or should have known of the agent's fraud . . . or where the principal is recklessly indifferent to the agent's acts." *In re Zaffron*, 303 B.R. 563, 572 (Bankr. E.D.N.Y. 2004) (citing *In re Lovich*, 117 F.2d 612 (1941)); *see also In re Walker*, 726 F.2d 452, 454 (8th Cir. 1984) (citing *Lovich* in concluding that a principal must either know or should have known of the agent's fraud for it to be imputed). *But see In re Rivera*, 217 B.R. 379, 386–87 (Bankr. D. Conn. 1998) (declining to extend nondischargeability imputation beyond the partnership context).

The Plaintiffs have alleged statements attributed to Oved that, based on substance, may be classified as follows: statements about Oved's due diligence, statements about his disinterestedness in the transaction, statements about the loan being secured, and statements about the purpose of the loan. Applying the above standard, the complaints and incorporated documents only demonstrate the falsity of two of these representations, which might, in turn, be justifiably imputed. The first statement was that Oved had done his due diligence with respect to the Debtor, which, according to the First Department's disciplinary committee, was not the case. *See* GSY Discip. Commit. Findings 2, ECF No. 8-1. Yet, despite the untruthfulness of this statement, the complaints afford no basis to conclude that the Debtor knew or should have known that Oved made this representation, or that he had failed to do due diligence.[9] The second representation was that the loans would be secured, when the documents provided only included

---

[9] Moreover, oral statements about a debtor's financial condition are explicitly excluded from the kinds of statements that give rise to liability under § 523(a)(2)(A). Oved's statement about the Debtor's ability to ensure repayment based on his various interests falls within this exempt category. *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761 (2018) ("[A] statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status.").

14

personal guarantees. On this point, it is possible to infer that the Debtor knew of this representation, particularly in light of the fact that the Debtor himself made that representation to Greenwald.

However, even if liability under § 523(a)(2)(A) is imputable to the Debtor based on misrepresentations about security for the loan, the claim would nevertheless fail on the element of reliance. Establishing a claim under this provision requires that a creditor justifiable rely on the misrepresentations made. *Field*, 516 U.S. at 74. Justifiable reliance is a minimal, subjective standard, but still requires that a creditor "use his senses," and will bar recovery "if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 71; *see also Cahill*, 2017 WL 713565, at * 7 (quoting *Field*). Though the complaints make no mention of the sophistication of Dafna or Greenwald, neither individual saw fit to review the loan documents prior to funding the loan. Had they merely waited, rather than relying solely on the Debtor or Oved's representations, the falsity of their statements would have been clear. Under those circumstances, neither plaintiff's reliance could be deemed justifiable, and any cause of action based on the Debtor or Oved's conduct under § 523(a)(2)(A) fails as a matter of law.[10]

While there is a small window for imputing liability under § 523(a)(2)(A), there is no similar basis to do so under subsection (a)(6). The plain language of that subsection provides that the injury caused must be "by the debtor," and, as such, it leaves no room for the imputation of another's acts. *See In re Maltais*, 202 B.R. 807, 811–12 (Bankr. D. Mass. 1996). A person's

---

[10] It is not clear from the complaints that the other two types of statements made, regarding Oved's disinterestedness and the purpose of loan, were false or misleading. Though Oved was the Debtor's attorney, the complaints do not allege that he had any interest in the underlying transactions, which is what he represented to the Plaintiffs. Similarly, there is little daylight between the explained purpose of the loans and their alleged actual purpose. Even if the descriptions of purpose were misleading, however, the Plaintiffs' reliance would be unjustified for the same reason outlined above.

willful and malicious actions therefore cannot be imputed for the purpose of § 523(a)(6). *See In re Gucciardo*, 577 B.R. 23, 37–38 (Bankr. E.D.N.Y. 2017) (quoting *In re Cook*, Bankruptcy No. 07-31763-mcr, Adversary No. 07-50072-mcr, 2009 WL 2872864, at *5 (Bankr. N.D.N.Y. Apr. 7, 2009)). Accordingly, as the pre-loan period in Dafna's complaint solely involved Oved's actions, no liability for this period under § 523(a)(6) may be imputed to the Debtor.

That liability under § 523(a)(6) may not be imputed applies with equal force to GSY's complaint. Yet, because of the sole statement made directly by the Debtor to Greenwald, imputation would not, on that ground, be necessary. Nevertheless, this lone statement about the secured status of the loan cannot support a prima facie case for willful and malicious injury. Willfulness under this subsection refers not to a willful act, but instead to a "deliberate or intentional injury." *Salim*, 577 B.R. at 625. Maliciousness, on the other hand, refers to an injurious act that is "without just cause or excuse, even in the absence of personal hatred, spite, or ill will." *Id.* Here, even if the inference of willfulness is assumed, there is no similar basis to infer malice. Far from affording the basis for a "strong inference" as is required by Rule 9(b), the surrounding circumstances, including the Debtor's post-loan conduct—which is the only conduct attributable to the Debtor— are as much suggestive of an unfortunate series of unfulfilled promises as they are of malice. *See id.* (stating that malice may be implied based on aggravating circumstances); Fed. R. Civ. P. 9(b). Indeed, the frustration of GSY's efforts to collect on the loan are attributable to Shavolian, and not the Debtor, and the GSY complaint affords no basis to infer the Debtor's involvement in Shavolian's actions. The Debtor's alleged pre-loan actions are therefore insufficient to make out a prima facie case under § 523(a)(6).

Post-Loan Period

Section 523(a)(2)(A) provides that a debt is nondischargeable to the extent that it is "obtained by" one of the three enumerated frauds. *See* 11 U.S.C. § 523(a)(2)(A). Moreover, the debt obtained must be one for "money, property, services, or an extension . . . of credit." *Id.* In light of this language, alleged fraud that occurs after one of those types of debts has been incurred does not generally give rise to liability unless some additional debt of the kind enumerated arises.[11] *See In re Caisse*, 568 B.R. 6, 12–13 (Bankr. S.D.N.Y. 2017); *In re Shahid*, Case No. 15-30868-HAC, Adv. Proc. No. 16-03009, 2016 WL 11003505, at *3 (Bankr. N.D. Fla. Nov. 3, 2016). A debtor's actions that merely result in forbearance are therefore not cognizable. *See Caisse*, 568 B.R. at 13.

That principle precludes liability for the Debtor under § 523(a)(2)(A) based on his post-loan actions as alleged by GSY. In that complaint, though the Debtor offered additional means of securing the loan that did not pan out, those actions did not give rise to an additional debt. Rather, they only resulted in GSY's forbearance until its eventual cross-claim asserted against the Debtor in the state court action.

Dafna, on the other hand, granted the Debtor an "extension" of an additional 30 days to repay the loan. At first blush, this constitutes an "extension agreement" cognizable under § 523(a)(2)(A). *See Caisse*, 568 B.R. at 13 ("An 'extension agreement' is '[a]n agreement providing an additional time for the basic agreement to be performed.'" (citing Black's Law Dictionary 703 (10th ed. 2014))). However, that extension agreement must be obtained by one of

---

[11] An exception to this general rule was likely carved out by the Supreme Court in *Husky*, 136 S. Ct. at 1589–90, where it held that a fraudulent conveyance scheme occurring after an initial debt was incurred could give rise to liability under the actual fraud provision of § 523(a)(2)(A). However, the Court did not explicitly rule on the "obtained by" issue, and the debtor's liability in that case arose from the transfer scheme, rather than the original debt, making the case distinguishable from the instant facts. *See Shahid*, 2016 WL 11003505, at *3.

the enumerated frauds, and here, the Dafna complaint merely alleges that a request was extended and granted, with nothing more. No fraudulent intent may be inferred from this request alone, or from the fact that the Debtor's later promises went unfulfilled. *See id.* ("[A]llegations that [the debtor] failed to perform promises at the time the debt was incurred do not imply that he did not intend to fulfill those promises at the time they were made."). The inference of intent is also undercut by the Debtor's payment to Dafna of $200,000. These facts cannot support a prima facie claim under § 523(a)(2)(A).

Section 523(a)(6) operates similarly to § 523(a)(2)(A) when applied to conduct occurring after an initial debt is incurred. Just as subsection (a)(2)(A) turns on the incurrence of new debt, (a)(6) looks to whether the alleged conduct resulted in an "injury." *See Shahid*, 2016 WL 11003505, at *2. Here, for both Dafna and GSY, the injury alleged was the initial debt. As the Debtor's subsequent conduct did not give rise to a separate injury beyond that debt, that conduct does not give rise to a claim under § 523(a)(6).

## Conclusion

For the reasons set forth above, the Debtor's motions to dismiss the complaints filed by GSY [Adv. Pro. No. 15-01070-nhl] and Dafna [Adv. Pro. No. 15-01071-nhl] are GRANTED. Both adversary proceedings are hereby dismissed, and the debts owed to Dafna and GSY are not excluded from the Debtor's discharge.

**IT IS SO ORDERED.**

Dated: September 27, 2018
Brooklyn, New York

**Nancy Hershey Lord**
**United States Bankruptcy Judge**